UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| CNY FAIR HOUSING, INC., | Case No. 5:22-cv-01172 (TJM/TWD) |
| Plaintiff, | |
| v. | COMPLAINT |
| BROOKDALE EAST SIDE;<br>BROOKDALE ITHACA;<br>BROOKDALE SUMMERFIELD;<br>BROOKDALE SENIOR LIVING<br>COMMUNITIES, INC.; | BENCH TRIAL DEMANDED |
| Defendants. | |

---

Plaintiff CNY Fair Housing Center, Inc. ("Plaintiff"), by and through its undersigned counsel, EISENBERG & BAUM, LLP, for its Complaint against Brookdale East Side; Brookdale Ithaca; Brookdale Summerfield; Brookdale Senior Living Communities, Inc.; ("Defendants") alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff is CNY Fair Housing, Inc. ("CNY Fair Housing"), a non-profit organization committed to ensuring that all people, including deaf individuals, have equal access to housing in Central and Northern New York.

2. At all times relevant to this action Defendants have owned, operated, and/or managed three assisted living facilities in Central and Northern New York. Defendants discriminated against both current and prospective deaf residents by refusing to provide auxiliary aids and services necessary for effective communication and equal access to Defendants' services.

3. American Sign Language ("ASL") is a visual, three-dimensional, non-linear language, and its grammar and syntax differ from the grammar and syntax of English and other spoken languages.

1

ASL is best thought of as a foreign language used by American deaf people, with its own grammar and syntax. Deaf individuals are often educated in Deaf schools and grow up in culturally Deaf environments. As a result of both physical and environmental factors, deaf individuals frequently have great difficulty achieving command of spoken or written English. From a pedagogical standpoint, for example, it is difficult to understand how English works if a person has never heard it. However, deaf individuals are often able to communicate with great complexity in ASL.

4.  Accordingly, in assisted living facilities, writing is not an effective means for deaf persons to communicate complex information such as assessments, planning, intake, screening, medical care, recreation, therapy, meetings, and various legal documentation.

5.  Lip-reading, the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and is no substitute for communication through a qualified sign language interpreter. Only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips. Even the most adept lip-readers, in an ideal one-to-one situation, have been found to understand only 26% of what is said.

6.  For these reasons, ASL interpreters are necessary for the great majority of deaf individuals receiving treatment in assisted living facilities when that care involves complicated information, lengthy communications, or when the individual has other conditions that make treatment or communicating through other means more difficult.

7.  CNY Fair Housing used Fair Housing testers ("Testers") to determine whether Defendant's assisted living facilities would supply an ASL interpreter for a deaf resident if requested or necessary. These Testers posed as relatives of deaf persons who were interested in utilizing Defendant's services and programs. When the Testers inquired whether the facilities would

provide interpreters for their deaf relatives, they were told that the facilities would not provide interpreters and do not offer ASL interpretation services.

8. In the context of assisted living facilities, the outright refusal to provide an ASL interpreter will result in ineffective communication for deaf residents. Defendant thus discriminated against current and prospective deaf residents by failing and/or refusing to provide qualified ASL interpreters or other auxiliary aids and services to ensure effective communication.

9. Plaintiff brings this lawsuit to compel Defendants to cease their unlawful discriminatory practices. Plaintiff seeks declaratory relief; compensatory and punitive damages; and attorneys' fees and costs to redress Defendants' unlawful disability discrimination in violation of the Fair Housing Act ("FHA").

## THE PARTIES

10. Plaintiff, CNY FAIR HOUSING, INC., is a private non-profit corporation organized under the laws of New York and registered to do business in New York. Its principal place of business is located in Syracuse, New York. CNY Fair Housing's mission is to ensure fair housing opportunity for all people in Central and Northern New York. Through education, research, advocacy, and enforcement, CNY Fair Housing works to eliminate housing discrimination and promote the creation of open, accessible, and inclusive communities that are diverse in race, gender, and disability.

11. CNY Fair Housing uses "Testers" who pose as prospective renters, home buyers, residents, and the like for the purpose of obtaining information about the conduct of local governments, landlords, real estate agents, companies, and others to determine if housing discrimination is taking place.

12. CNY Fair Housing expended staff time and other resources to investigate and respond to Defendant's discriminatory practices, which diverted resources away from CNY Fair Housing's other activities.

13. Defendants' discriminatory rental practices frustrated CNY Fair Housing's mission to ensure that all people have equal access to housing opportunities by, among other things, making assisted living facilities inaccessible to individuals with disabilities.

14. Defendant Brookdale East Side is a senior living facility located at 7164 E. Genesee Street, Fayetteville, New York 13066. Upon information and belief, Defendant is subject to the requirements of the FHA.

15. Defendant Brookdale Ithaca is a senior living facility located at 103 Bundy Road, Ithaca, New York 14850. Upon information and belief, Defendant is subject to the requirements of the FHA.

16. Defendant Brookdale Summerfield is a senior living facility located at 100 Summerfield Village Lane, Syracuse, New York 13215,. Upon information and belief, Defendant is subject to the requirements of the FHA.

17. Defendant Brookdale Senior Living Communities, Inc. is a Delaware entity registered to do business in New York. Its registered agent is Corporation Service Company at 80 State Street, Albany, NY, 12207. Upon information and belief, Defendant owns, oversees, manages, licenses, and/or operates Defendants Brookdale East Side, Brookdale Ithaca, and Brookdale Summerfield.

**JURISDICTION & VENUE**

18. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiffs' claims arising under federal law.

19. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Defendants reside within the jurisdiction of this District, and/or a substantial part of the events that give rise to the claims occurred in this District, and/or the Defendant have sufficient contacts with this District to subject them to personal jurisdiction at the time this action is commenced.

## STATEMENT OF FACTS

### CNY Fair Housing's Testing Methods

20. CNY Fair Housing's testing investigation against Defendants involved Testers making telephone calls to Defendants' facilities. Testers, operating under aliases, made inquiries purportedly on behalf of fictional deaf relative(s). Testers gathered preliminary information about Defendants' services and inquired specifically about the availability of auxiliary aids and services, including onsite ASL interpreters, for their deaf relative(s).

21. Audio recordings were made of all contacts between Testers and agents of Defendants

### Factual Allegations Regarding Brookdale East Side

Test #1

22. On June 18, 2021, Tester K.C., under an alias, called Brookdale East Side and spoke with an employee named "Jill." Tester told Jill that she is looking for a place for her deaf uncle and inquired whether the facility provides an ASL interpretation. Jill stated, "I don't believe so, give me one second" and put Tester on hold. When Jill came back to the phone she stated that "right now we do not."

Test #2

23. On October 21, 2021, Tester P.H., under an alias, called Brookdale Eastside and spoke with an employee named "Jill." Tester told Jill that he is looking for a place for his deaf father who needs ASL interpretation services. Jill told Tester that they do not have those services at the

5

facility. When Tester asked about providing interpretation for important medical or legal occasions, Jill responded that the family would have to coordinate one for the deaf resident.

### Factual Allegations Regarding Brookdale Ithaca

24. On June 30, 2021, Tester P.H., under an alias, called Brookdale Ithaca and spoke with an employee named "Brandon." Tester informed Brandon that he is looking for a place for his deaf father who needs ASL interpretation services. Tester told Brandon that his father does not do well with reading lips or writing. Tester told Brandon that he is interested in Brookdale Ithaca. Brandon, who works at the corporate office in Nashville, called Brookdale Ithaca to inquire about accommodations for Tester's deaf father. When Brandon returned, he stated to Tester, "I spoke to the Ithaca community and unfortunately they are not able to meet the ASL needs."

### Factual Allegations Regarding Brookdale Summerfield

Test #1

25. On July 7, 2021, Tester L.M, under an alias, called Brookdale Summerfield and spoke with an employee named "Cindy." Tester told Cindy that her father is deaf and asked whether the facility provides ASL interpretation services. Cindy told Tester that they do not offer such services. When asked again Cindy reaffirmed that they do not offer ASL services.

Test #2

26. On August 27, 2021, Tester L.M, under an alias, called Brookdale Summerfield and spoke with Executive Director Dina about her deaf father who needs ASL interpretation services. Dina said she knows rudimentary ASL but the staff do not know sign language at this time. Dina said that they cannot guarantee that there would be someone always available, but they have people that are willing to learn at least rudimentary sign language to be able to communicate with him.

### Factual Allegations regarding Brookdale Senior Living Communities, Inc.

27. Upon information and belief, at all times relevant to this action, Defendants Brookdale Senior Living Communities, Inc. was a parent entity that owned, oversaw, managed, licensed, and/or operated Defendants Brookdale East Side, Brookdale Ithaca, and Brookdale Summerfield.

28. Upon information and belief, Defendant Brookdale Senior Living Communities, Inc. had significant control of the operations of Defendants Brookdale East Side, Brookdale Ithaca, and Brookdale Summerfield, including but not limited to implementing policies and procedures regarding accommodations for persons with disabilities and related employee training.

29. Upon information and belief, Brookdale Senior Living Communities, Inc. failed to implement policies and procedures regarding reasonable accommodations for deaf individuals.

30. Upon information and belief, Brookdale Senior Living Communities, Inc. failed to adequately train their employees on how to reasonably accommodate deaf individuals receiving services at Brookdale communities.

31. All Defendants are alter-egos of each other. *Johnson v. BLC Lexington, SNF, LLC*, No. 5:19-064-DCR, 2019 U.S. Dist. LEXIS 198516 (E.D. Ky. Nov. 15, 2019) (finding that Brookdale and its subsidiaries are alter-egos of each other). Otherwise, all of them acted as agents of each other and are single, joint, and/or common enterprises. As such, Defendants' actions or conducts cannot be distinguished from each other and they are all directly and/or vicariously liable for their actions.

32. As a result of Brookdale Senior Living Communities, Inc.'s failures, Brookdale facilities across the country have been repeatedly sued in the federal courts in nearly identical fair housing cases, relating to the facilities' failure and/or refusal to provide ASL interpreters to deaf individuals. *See Nat'l Fair Hous. Alliance. v. Brookdale Senior Living, Inc. et al.*, No. 20-cv-

00457-LF-GJF, ECF No. 1 (D.N.M. May 13, 2020); *Sw. Fair Hous. Council v. Brookdale Living Communities, Inc.*, No. 19-cv-00181-RM, ECF No. 2 (D. Ariz. Mar. 27, 2019).

33. Upon information and belief, despite repeated lawsuits, Brookdale Senior Living Communities, Inc. made no changes to their policies, procedures, and or trainings regarding providing accommodations for persons with disabilities. As a result, Brookdale Senior Living Communities, Inc. failed to ensure that their assisted living facilities were in compliance with federal antidiscrimination laws.

## COUNT I: VIOLATIONS OF THE FAIR HOUSING ACT

34. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

35. This action is brought to enforce of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, *et seq*.

36. At all times relevant to this action, Defendants owned, operated and/or leased dwellings within the meaning of U.S.C. § 3602(b), which includes "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families."

37. The FHA provides that it is illegal "to discriminate against any person in the terms, conditions, privileges of sale or rental of a dwelling or in the provision of services or facilities in connection with such dwelling," because of disability. 42 U.S.C. § 3604(f)(2).

38. Under the FHA, discrimination includes "a refusal to make reasonable accommodations in rules, polices, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

39. Under the FHA, it is unlawful to "make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling

that indicates any preference, limitation, or discrimination based on . . . handicap . . . or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c).

40. As described above, Defendants violated the FHA by, inter alia, refusing Plaintiff's Testers' reasonable accommodation request of a qualified ASL interpreter for their deaf family members that would allow equal access and opportunity to use and enjoy Defendants' dwelling and services, which equally situated hearing residents are able to enjoy.

41. Plaintiff is an aggrieved person within the meaning of 42 U.S.C. § 3602(i), has been injured as a result of Defendants' discriminatory conduct, and has suffered damages, including diversion of resources and frustration of mission.

42. Accordingly, Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs pursuant to the FHA, 42 U.S.C. § 3613(c).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Court grant the following relief:

a. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have discriminated in violation of the FHA.

b. Enjoin Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals meaningful access to and full and equal enjoyment of Defendants' facilities, services or programs;

c. Order Defendants:

    i. to develop, implement, promulgate, and comply with a policy prohibiting future discrimination of failing to provide effective communication against deaf or hard of hearing individuals;

ii. to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an onsite interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendants;

iii. to develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

iv. to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing individuals are able to communicate through the most appropriate method under the circumstances;

v. to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

vi. to train all their employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the FHA.

vii. to train all their employees, staff, and other agents on a regular basis about Defendants' policy regarding how to obtain interpreters when reasonably requested by deaf or hard of hearing individuals; and

viii. to implement a program of testing Defendants' employees, staff, and other agents to determine whether they are complying with the requirements of the FHA.

d.  Award to Plaintiff:

   i.   Compensatory damages pursuant to the FHA;

   ii.  Punitive damages pursuant to the FHA;

   iii. Reasonable costs and attorneys' fees pursuant to the FHA;

   iv.  Interest on all amounts at the highest rates and from the earliest dates allowed by law;

   v.   Any and all other relief, including nominal damages, that this Court finds necessary and appropriate.

Dated: November 9, 2022

Respectfully submitted,

By:

_____
Andrew Rozynski, Esq.
EISENBERG & BAUM, LLP
24 Union Square East, Penthouse
New York, NY 10003
Main: (212) 353-8700
Fax: (917) 591-2875
Email: arozynski@eandblaw.com